**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0703n.06

**No. 10-5205**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Oct 06, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **MARY ANNE LAIRD,** | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| *Plaintiff-Appellant,* | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| v. | ) | KENTUCKY |
| | ) | |
| **NORTON HEALTHCARE, INC., HARTFORD** | ) | **O P I N I O N** |
| **LIFE & ACCIDENT INSURANCE CO.;** | ) | |
| **HARTFORD-COMPREHENSIVE EMPLOYEE** | ) | |
| **BENEFITS SERVICE CO.**, | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

BEFORE:  GIBBONS and WHITE, Circuit Judges; and OLIVER, Chief District Judge.[*]

SOLOMON OLIVER, JR., Chief District Judge.  Plaintiff-Appellant, Mary Anne Laird ("Laird") appeals the district court's granting of summary judgment in favor of Defendants-Appellees Norton Healthcare ("Norton"), Hartford-Comprehensive Employee Benefits Services Company ("Hartford-CEBSCO"), and Hartford Life and Accident Insurance Company ("Hartford Life") (collectively, "Defendants").  For the following reasons, we **AFFIRM** the judgment of the district court.

## I.  FACTUAL AND PROCEDURAL HISTORY

This case arises from a dispute over short-term and long-term disability benefits under insurance polices governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§1001-1461 (2006).  Laird was employed by Norton and, as an employee of Norton was issued two disability benefits plans: a short-term disability plan ("STD Plan") and a long-term disability plan ("LTD Plan"). The

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

STD Plan was insured by Norton and administered by Hartford-CEBSCO. The LTD Plan was both insured and administered by Hartford Life. While employed by Norton, Laird became ill and sought payment of short-term disability benefits from Norton and Hartford-CEBSCO and payment of long-term benefits from Hartford Life. On August 18, 2008, Laird filed a Complaint in the Jefferson Circuit Court. Defendants timely removed the action to the district court. On February 9, 2009, Hartford Life and Hartford-CEBSCO filed their respective Motions to Dismiss, and Norton filed its Motion for Summary Judgment. On January 29, 2010, the district court rendered its opinion, granting Defendants' Motions.[1] On February 26, 2010, Laird filed her Notice of Appeal.

### A. Short-Term Disability Benefits Claim

On July 3, 2003, Laird injured her neck at work and applied for short-term disability benefits. Hartford-CEBSCO denied Laird's application for short-term disability benefits because her injury was sustained at work and thus was exempt from the STD Plan's coverage. Laird has conceded that the denial of her short-term disability benefits claim based on her neck injury was appropriate. Later that same year, Laird suffered a series of strokes that left her unable to work after November 26, 2003. Laird again applied for short-term disability benefits, which Hartford-CEBSCO denied on April 20, 2004. In denying her claim, Hartford-CEBSCO determined that Laird did not present sufficient evidence to show that she was "totally disabled" as required by the STD Plan.

In her Complaint, Laird alleges that, on July 2, 2004, she appealed Hartford-CEBSCO's decision denying her short-term disability benefits by certified mail. Laird attached to her Complaint as "Exhibit B" an appeal letter dated July 2, 2004. Hartford-CEBSCO contends that it never received the July 2, 2004 appeal letter, and that the only correspondence it received from Laird regarding the denial of her claim were

---

[1]The district court analyzed Defendants' Motions under the summary judgment standard despite Defendants Hartford Life and Hartford-CEBSCO filing motions to dismiss. Neither Laird nor Defendants contest the district court's conversion of Hartford Life and Hartford-CEBSCO's Motions to Dismiss into Motions for Summary Judgment.

two telephone calls inquiring about the denied claim, and three letters from attorneys representing Laird on this matter, the first of which was sent on June 30, 2006.[2] The last letter, sent by Laird's attorney on April 30, 2007, included a copy of the July 2, 2004 letter. Hartford-CEBSCO alleges that the April 30, 2007 letter was the first time Laird notified it of her desire to appeal the denial of her claim. Under the STD Plan, Laird had to submit a written appeal within 180 days of the denial of her claim. Hartford-CEBSCO denied Laird's appeal because it was not submitted within 180 days of the denial of her claim as required by the STD Plan.

The district court granted summary judgment in favor of Defendants on Laird's short-term disability benefits claim. It determined that Laird did not file her appeal within 180 days of the denial of her claim as required by the STD Plan. The court rejected Laird's argument that, under the common law mailbox rule, she was entitled to a rebuttable presumption that she sent her appeal letter on July 2, 2004. The court found that Laird could not maintain her claim against Defendants because Laird had failed to exhaust the administrative remedies prior to bringing this action. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004).

## B. Long-Term Disability Benefits Claim

In her Complaint, Laird alleges that, on April 29, 2008, she applied for long-term disability benefits by certified mail. Laird further alleges that Hartford Life failed to respond to her application within the required sixty-day deadline and thus constructively denied her claim. Hartford Life contends that Laird's application for long-term disability benefits is untimely and that Laird failed to exhaust her administrative

---

[2]The first letter, dated June 30, 2006, was addressed to "Hartford" to inform the insurance company that the Law Offices of Driscoll & Associates had been contacted to investigate a possible appeal of Laird's claim. Driscoll & Associates requested a copy of Laird's claims file. The second letter, dated August 11, 2006, was addressed to Hartford Life to inform the company that Wallingford Law, PSC, would be representing Laird for both her short-term and long-term disability benefits claims. Wallingford Law, PSC, requested several documents including copies of the STD and LTD Plans. The third letter, dated April 30, 2007, was addressed to "The Hartford" to inform the company that Segal, Lindsay, & Janes PLLC, would be representing Laird on her claims. The law firm indicated that Laird had appealed her adverse decision on July 2, 2004 and had not received a response to the appeal. The firm attached her appeal letter to its letter.

remedies. Under the LTD Plan, a claimant's long-term disability benefits become payable 180 days after the claimant is disabled. A claimant must also file "proof of loss" within 90 days after the 180-day period for which benefits become payable. "Proof of loss" is documentation of information relevant to a claim for disability benefits and includes the date, the cause, and the prognosis of the disability. The LTD Plan allows up to a year extension of the 90-day deadline for submission of "proof of loss." Thus, a claimant must file a complete application, including "proof of loss," within 270 days of the claimant's onset of disability, unless the claimant receives an extension.

The district court determined that Laird did not timely file her "proof of loss" and thus failed to exhaust the LTD Plan's administrative remedies. Laird stated in her affidavit that she mailed her long-term disability benefits application on April 26, 2008, and that Hartford Life received the application three days later on April 29, 2008. Although Hartford Life initially argued that Laird did not submit an application for long-term disability benefits, in its reply in support of its motion to dismiss, Hartford Life assumed that it had received the application on the date specified by Laird. Within her Complaint, Laird pled that the onset of her disability was July 4, 2003. Thereafter, she requested that the district court use two other dates as the onset of her disability: November 26, 2003, and April 19, 2004. The district court determined that Laird was untimely under each of the above onset dates. The court calculated that, even under the later date of April 19, 2004, Laird was required to submit her "proof of loss" by January 14, 2005, 270 days after the April 19 onset. The date Laird maintains she submitted her long-term disability benefits application, April 26, 2008, is well past the January14, 2005 deadline. Further, Laird's application would still be untimely if she had received a  year-long extension under the LTD Plan. The court found that the extension would have expanded Laird's "proof of loss" deadline to January 14, 2006, two years past the deadline.

In response, Laird argued that filing her long-term disability benefits claim would have been futile because Hartford-CEBSCO had already denied her short-term disability benefits claim. Laird further asserted that Hartford Life is equitably estopped from denying her claim because she relied on a statement made by

Norton's suburban benefits coordinator, Kim Satterly ("Satterly"), not to apply for long-term disability benefits because her short-term disability benefits had been denied. The court determined that Laird did not meet the futility exception for an ERISA claim and had not fulfilled the elements for equitable estoppel. The district court granted the Motion for Summary Judgment in favor of Defendants because Laird's long-term disability benefits claim was untimely, and she was not entitled to relief under the futility exception or equitable estoppel.

## II. STANDARD OF REVIEW

We review a district court's granting of summary judgment *de novo*. *Price v. Bd. of Trs. of the Ind. Laborer's Pension Fund*, 632 F.3d 288, 291 (6th Cir. 2011). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

## III. LAW AND ANALYSIS

ERISA requires that every employee benefit plan give "a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §1133. This Circuit has determined that "the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Coomer,* 370 F.3d at 504 (quoting *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).

Laird argues on appeal that the trial court erred in finding that she failed to exhaust her administrative remedies under the STD and LTD Plans because: (1) she is entitled to the rebuttable presumption of the common law mailbox rule that she mailed her appeal letter for her short-term disability benefits claim on July 2, 2004, within the STD Plan's deadline for appeals; (2) filing a claim for long-term disability benefits would have been futile because her short-term disability benefits claim was denied; and

(3) she is entitled to relief under the doctrine of equitable estoppel for her long-term disability benefits application against Hartford Life for comments made by Satterly, a Norton employee, who dissuaded her from timely submitting her application.

### A. Issue 1: Common Law Mailbox Rule

The common law mailbox rule applies when there is a question regarding whether a document was received by the addressee. The "proper and timely mailing of a document raises a rebuttable presumption that [the document] is received by the addressee." *Carroll v. Comm'r*, 71 F.3d 1228, 1232 (6th Cir. 1995) (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992)). This Circuit has determined that this rebuttable presumption arises upon proof that the document was "properly addressed, had sufficient postage, and was deposited in the mail." *In re: Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985). Sufficient proof that the letter was mailed includes signed receipts from certified mail and documentation of mailing contained in a party's business records. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007). Once the party provides sufficient proof to raise the mailbox rule presumption, this presumption may be rebutted by testimony of non-receipt of the document. *Yoder*, 758 F.2d at 1118. ("Testimony of non-receipt, standing alone, would be sufficient to support a finding of non-receipt.")

This Circuit has not determined whether the common law mailbox rule applies to ERISA cases.[3] We find that even if the rule was extended to ERISA cases[4], Laird has not proffered sufficient evidence to raise a presumption of receipt under the rule. *Yoder*, 758 F.2d at 1118.

Hartford-CEBSCO denied Laird's claim on April 13, 2004. Laird had 180 days thereafter, or until October 17, 2004, to submit her appeal. The district court reviewed the evidence which consisted of an appeal letter dated "July 2, 2004," that was attached to Laird's Complaint and Laird's affidavit. In her affidavit, Laird described her conduct involving the appeal letter and stated, in pertinent part:

> That on or about July 2, 2004 I prepared and typed on my computer a draft letter of appeal regarding my short term disability claims. . . . Later that same day, I retyped the draft letter and added the correct address of [Appellee] Hartford-CEBSCO. . . . This letter was appended to the Complaint as Plaintiff's Exhibit 'B' and was mailed to the address shown thereon.

The district court determined that the statements within the affidavit were not sufficient to show that Laird mailed the letter on July 2, 2004. We agree. As the court held in *Yoder*, for the presumption of receipt to arise under the common law mailbox rule, a party must present evidence that the letter was "properly addressed, had sufficient postage, and was deposited in the mail." 758 F.2d at 1118. There is

---

[3]This Circuit has rejected the application of the mailbox rule in taxpayer suits pursuant to 26 U.S.C. §7502, *Miller v. United States*, 784 F.2d 728, 730–31 (6th Cir. 1986), appeals of immigration decisions, *Vasquez Salazar v. Mukasey*, 514 F.3d 643, 645 (6th Cir. 2008), and in regard to the filing date for appeals of bankruptcy court decisions. *See In re LBL Sports Center, Inc.*, 684 F.2d 410, 413 (6th Cir. 1982). This Circuit has applied the prison mailbox rule in the context of *pro se* prisoner cases. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002) (per curiam) (extending *Houston v. Lack*, 487 U.S. 266 (1988))) (Under the "'prison mailbox rule,' a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court.").

[4]At least one court of appeals has held that the common law mailbox rule applies in ERISA cases when the employee benefits plan is silent on how to determine when an application is received by the Administrator. *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961–62 (9th Cir. 2001).The *Schikore* court stated that, in applying the common law mailbox rule, the claimant has the initial burden of showing the application was timely mailed and can meet this burden by presenting a sworn declaration that the application was timely mailed. *Id*. at 961.

nothing within Laird's affidavit that states she affixed sufficient postage or, more critically, when she deposited the letter in the mail.[5]  *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884) (Under the common law mailbox rule, it "is well settled that 'if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.'").  Laird's exhibit and affidavit does not support such a conclusion.

Further, the district court determined that, in addition to Laird's affidavit not indicating the date on which she mailed the appeal, she did not present any "third-party evidence" to support her affidavit.  There is case law suggesting that a party who seeks to invoke the mailbox rule presumption needs to support with corroborating evidence a sworn statement that the document was mailed.  *See Sorrentino*, 383 F.3d at 1189 (party was not entitled to the mailbox rule presumption when the only evidence presented was the party's uncorroborated self-serving testimony of mailing).  *But see*, *Schikore*, 269 F.3d at 961(determining that the appellant's sworn declaration that she mailed a document on a date was credible evidence sufficient to invoke the mailbox rule).  This Circuit has not determined whether corroborating evidence is required to support a party's statement that she properly mailed a document.  However, if corroborating evidence is required, it is clear that there is no such evidence in this case.  In light of the fact that Laird's affidavit and exhibit do not have the specificity required by the mailbox rule, there is no need to address this issue.  The district court did not err in granting the Motion for Summary Judgment in favor of Hartford-CEBSCO and Norton on this basis.

## B.  Issue 2: Futility Exception to Exhaustion Requirement

---

[5]Hartford-CEBSCO does not contest that the address within the letter attached as Exhibit B to Laird's Complaint, "The Hartford, 3800 American Blvd. West, Bloomington, MN 55431," is the proper address for the company.

It is within a court's discretion to determine whether ERISA's administrative exhaustion requirement applies to the case before it. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). "[A] court is obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Id*. ERISA's administrative exhaustion requirement has been excused when: (1) the "Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it," *Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006) (quoting *Constantino v. TRW, Inc.*, 13 F.3d 969, 975 (6th Cir. 1994)); and (2) "when the defendant 'lacks the authority to institute the [decision] sought by [the] [p]laintiffs,'" *Id.* (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 719 (6th Cir. 2005)). A plaintiff raising the futility exception must show "a clear and positive indication,"*Fallick*, 162 F.3d at 419, that "it is certain that his claim will be denied." *Id*. (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)). "Where . . . a plaintiff has exhausted one claim but not another, he may demonstrate futility by showing that the two claims are so identical that the denial of one demonstrates with certainty that the other will also be denied." *Dozier*, 466 F.3d at 535 (quoting *Cilano v. Alstom Transp. Inc.*, No. 04-CV-6322 CJS, 2005 WL 139172, at *2 (W.D.N.Y. Jan. 18, 2005)). A plaintiff arguing futility based on the fact that a previous claim has been denied must first show that he has exhausted the administrative remedies of the denied claim. *Id*. (citing *Lindemann*, 79 F.3d at 650). Assuming denial of the first claim, courts have applied the futility exception where the same administrator would have made the final determination on both claims, *see Dozier*, 466 F.3d at 535; where the "denial of the easier-to-obtain claim precluded eligibility for the more difficult-to-prove claim," *id*.; or where the denial of one claim prohibits a claimant from receiving another claim's benefits, *Cilano*, 2005 WL 139172, at *2.

The district court determined that Laird did not qualify for the futility exception. Noting that Laird's case was not analogous to the contexts where the futility exception applies, the district court found that Laird's "available administrative avenues for relief were not so obviously dead ends that they were not worth

-9-

pursuing at all for several years." The court saw no reason why Hartford-CEBSCO's denial of her short-term disability benefits claim would influence Hartford Life's determination of her long-term disability benefits claim because both insurance companies are "separate entities with different employees in charge of making coverage decisions."

On appeal, Laird argues that it would be futile for her to apply for long-term disability benefits because this determination would be based on the same definition of "disability" that was used to deny her short-term disability benefits application because she did not offer sufficient evidence to show "total disability." We disagree. In order to show futility based on the denial of a separate claim, Laird would be required to exhaust her short-term benefits claim, the first claim she applied for, which she has not done. *See Dozier*, 466 F.3d at 535 (citing to *Lindemann*, 79 F.3d at 650). Further, Laird's case is not factually similar to the cases where the futility exception has been applied based on the similarity between claims. In Laird's case, different administrators had responsibility for determining benefit eligibility for the STD and LTD Plans. Further, Laird has not presented evidence that would tend to demonstrate that, in her case, short-term disability benefits were more difficult to obtain than long-term disability benefits, and as such, that the denial of her short-term disability benefits claim would preclude her from obtaining long-term disability benefits. There is simply no evidence to show that the denial of her short-term disability benefits claim would have prohibited her from obtaining her long-term disability benefits. As a result, Laird has not shown, with certainty, that the Plans' shared "disability" definition would have resulted in Hartford Life denying her claim. For the foregoing reasons, the district court did not err in granting the motion for summary judgment in favor of Hartford Life.

### C. Issue 3: Equitable Estoppel

A party raising a claim for equitable estoppel must show:

(1) conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that

the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Marks v. Newcourt Credit Corp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998)(en banc)). However, "[p]rinciples of estoppel [ ] cannot be applied to vary the terms of unambiguous [ERISA] plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Smiljanich v. GMC*, 302 F. App'x. 443, 448 (6th Cir. 2008). This is because a party's reliance on a representation inconsistent with a plan document's clear and unambiguous terms "seldom, if ever, be reasonable or justifiable." *Sprague*, 133 F.3d at 404. Further, "to allow estoppel to override the clear terms of plan documents would be to enforce something other than the plan documents themselves." *Id*.

The district court determined that Hartford Life was not equitably estopped from denying Laird's claim because Laird relied on a suggestion, made by Satterly, a Norton employee, not to apply for long-term disability until she was approved for short-term disability. Further, the court found that Laird did not offer any evidence showing that Hartford Life directed or influenced Satterly to make the suggestion to Laird.

On appeal, Laird argues that, although Satterly is a Norton employee, Norton employees "provide the plan" and give "the appearance that they have authority to speak and to give information and advice about the disability plans furnished by Nortons." She further contends that, until she had applied for short-term disability benefits, she "had no idea who the plan administrators were or where they were," and that Satterly's advice made sense, and she relied on Satterly's statements to her detriment.

Laird argues, essentially, that Satterly's representation should be attributed to Norton because Norton gives employees like Satterly "the appearance that they have authority" to advise her on these matters. The district court did not address whether Laird's claim for equitable estoppel applied to Norton, as the sponsor of the long-term benefits plan, but only discussed this claim against Hartford Life. Both Hartford Life and Norton argue that Norton is not a proper party to Laird's long-term disability benefits claim because only

-11-

Hartford Life administered and insured the long-term benefits plan. "Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988).[6] Laird has not offered any evidence to show that Norton was in "control" of the administration of the LTD Plan in order to make Norton a proper party to her long-term benefits claim. Thus, we will only consider Hartford Life's actions for Laird's claim for equitable estoppel. Laird's estoppel claim arising from Satterly's comment cannot be used against Hartford Life. Satterly is not an employee of Hartford Life, and Laird has not shown any connection between Satterly's comments and Hartford Life's potential administration of her long-term benefits claim.

Further, Laird's estoppel claim is barred because Hartford Life's LTD Plan is unambiguous about when benefits become payable to employees covered by the Plan. Here, Laird's benefits became payable when she "became disabled" and "remained disabled beyond the Elimination Period,"[7] if she was "under the Regular Care of a Physician," and if she had "submit[ted] Proof of Loss" to satisfy the administrator. No provision in the Plan provides that an award of long-term disability benefits depends on a claimant's short-term disability benefits determination. Indeed, the STD and LTD Plans have separate manuals that set forth the requirements for each type of benefit. In order for this claim to survive summary judgment, Laird needs to show that there exists some genuine issue of material fact regarding Hartford Life's representations to her about an *ambiguous* provision in the LTD Plan. *See Smiljanich*, 302 F. App'x at 448. (emphasis added). Laird has not proffered any evidence to meet this burden. Therefore, the district court did not err in granting the motion for summary judgment in favor of Hartford Life.

## IV. CONCLUSION

---

[6]A portion of the *Daniel* decision has been disapproved in *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 549 (6th Cir. 1989). Yet, the *Brown* decision does not affect the legal proposition used in this case.

[7]The "Elimination Period" is the 180-day period after a claimant becomes disabled.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.